UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIUS COPELAND,

       Plaintiff,                          Case No. 19-13404

vs.                                    HON. MARK A. GOLDSMITH

CORY SADLER, et al.,

       Defendants.
_____/

**OPINION & ORDER
REGARDING RULE 56(f) NOTICE (Dkt. 41)**

This is a civil rights action brought by Plaintiff Darius Copeland against Defendants Officers Cory Sadler, Jason Otter, and Nathanial McKinstry. In its opinion and order dated April 15, 2021, the Court denied Copeland's motion for partial summary judgment and granted Defendants' motion for partial summary judgment. 4/15/21 Op. (Dkt. 41). The Court also provided notice pursuant to Federal Rule of Civil Procedure 56(f) that it was considering entering summary judgment on Copeland's search claim in favor of Sadler and on Copeland's seizure claims in favor of all three officers. Id. at 2, 23–24. The Court gave the parties an opportunity to respond to its Rule 56(f) notice. Id. at 23. Copeland filed a response (Dkt. 46) and Defendants filed a reply (Dkt. 50). For the following reasons, the Court declines to enter summary judgment on either claim.

### I. BACKGROUND

    **A. Factual Background**

The relevant factual background has been set forth in the Court's prior opinion and order and thus need not be repeated in full here. See 4/15/21 Op. at 2–5. The subject events began

when Sadler went to 32058 Bruce Street in Romulus, Michigan after a dispatcher relayed to him that a caller had reported seeing a drunk driver pull into that address. Id. at 2. As Copeland recited in his summary judgment brief, when Sadler arrived at the Bruce Street address, Copeland was standing in the driveway, waving at Sadler, and when Sadler attempted to stop and question Copeland, Copeland "walked into his open garage." See Pl. Mot. for Summ. J. at PageID.476–478 (Dkt. 31) (citing Sadler Dep. 16–17 (Dkt. 31-1)). Accordingly, the Court accepted these facts as undisputed.[1]

Sadler followed Copeland into the open garage. 4/15/21 Op. at 3. Sadler put his hand on Copeland's arm and asked him to stop and speak with him. Id. Copeland curled his arm in response. Id. Sadler told Copeland that he was going to handcuff Copeland for the safety of both individuals, which Copeland then permitted Sadler to do. Id.

When Otter and McKinstry then arrived at the scene, they entered the garage to provide assistance to Sadler. Id. at 4. The caller who reported the drunk driver came to the residence as well, but he could not recall whether Copeland was the drunk driver. Id. Sadler ran Copeland's license through the law enforcement information network. Id. The search returned a preexisting domestic violence warrant for Copeland from Van Buren Township. Id. Sadler informed Copeland that he was being arrested on the warrant from Van Buren, and Otter and McKinstry then transported Copeland to the Van Buren jail. Id. at 5.

---

[1] As explained below, Copeland now raises a question of fact regarding where the initial confrontation took place, by pointing out in his response to the Court's Rule 56(f) notice, that there is evidence in the record that Sadler first encountered Copeland inside the garage—not in the driveway. Resp. at PageID.952 (citing Copeland Dep. at 42–43 (Dkt. 46-5)). Copeland faults the Court for overlooking this evidence initially, but Copeland's summary judgment motion did not suggest that there was any such evidence; nor did his motion argue that the issue of initial confrontation in the driveway was disputed by Copeland. In these circumstances, the Court was under no obligation to search the record.

### B. The Parties' Summary Judgment Briefing and the Court's April 15 Opinion

As relevant here, Copeland sought summary judgment on the search claim and the seizure claim. Otter and McKinstry sought summary judgment on the wrongful search claim. The Court briefly summarizes its holdings on each of these claims and considers arguments that Copeland makes to dispute these findings in his current response brief. The Court then provides background on its Rule 56(f) notice.

#### i. Copeland's Motion for Summary Judgment on the Search Claim

Regarding the search claim, Copeland argued that the officers violated the Fourth Amendment because they entered his open garage without a warrant and without exigent circumstances. Pl. Mot. for Summ. J. at 7–8. Underlying this argument was an assumption that the home (and therefore the attached garage) belonged to Copeland. However, Copeland failed to provide admissible evidence showing that the home actually belonged to him or that he otherwise had some basis for claiming a legitimate expectation of privacy in the premises into which the officers had entered. Accordingly, the Court denied Copeland's motion for summary judgment on his wrongful search claim. 4/15/21 Op. at 11–12.

Copeland now argues that because Defendants did not contest his statement that "Plaintiff's garage is part of the curtilage of his home," see Pl. Statement of Materials Facts ¶ 4 (citing Sadler Dep. at 17, 24; Pictures of Home (Dkt. 31-4)), the Court should have concluded that Copeland's rightful possession of the home (and, therefore, the attached garage) was undisputed, see Resp. at PageID.951–952, 971, 977.

There are two flaws with this argument. First, whether an area is within the curtilage of a home is a legal conclusion and, therefore, the Court was under no obligation to accept this statement as true. See Zuress v. City of Newark, No. 2:17-cv-866, 2019 WL 4697026, at *8

(S.D. Ohio Sept. 26, 2019). Second, the cited materials do not prove that the home and its garage belonged to Copeland. Copeland cites a portion of Sadler's deposition testimony where Sadler testified that Copeland tried to enter the home through the door connecting the garage to the home (but none of Copeland's keys could open the door), and he also testified regarding where he and Copeland were standing when Otter and McKinstry arrived. Sadler Dep. at 17, 24. If anything, Sadler's testimony that none of Copeland's keys could open the door suggests that the home was not Copeland's. And the pictures of the home are merely Google Maps images of the home, see Pictures of Home; they in no way establish that the home and its garage belonged to Copeland.

Copeland has now submitted affidavits from the landlord/property owner and others to show that he lived at the Bruce Street Address. See Williams Aff. (Dkt. 46-6); Copeland Aff. (Dkt. 46-7); Spencer Aff. (Dkt. 46-8). Because Copeland failed to submit these materials in connection with his summary judgment motion, the Court was unable to consider them in adjudicating the motion. Thus, the Court correctly concluded that Copeland failed to carry his burden in showing that undisputed facts established his entitlement to summary judgment on the search claim as a matter of law.

### ii. Otter and McKinstry's Motion for Summary Judgment on the Search Claim

The Court granted Otter and McKinstry summary judgment on the search claim based on their entitlement to qualified immunity. The Court explained that even assuming that the home was Copeland's at the time of the incident, no case clearly establishes that it is unreasonable for officers responding to a drunk driving report to enter an open garage to aid their fellow officer who is already inside the open garage with a handcuffed suspect, nor would such a potential constitutional violation be obvious to a reasonable officer. 4/15/21 Op. at 12–15.

In his response to the Court's Rule 56(f) notice, Copeland argues that the Court improperly considered Otter and McKinstry's motion for summary judgment on the search claim—raised in their response to Copeland's motion for summary judgment—and failed to give Copeland an opportunity to respond to Otter and McKinstry's claims of qualified immunity. Resp. at PageID.950–951. Both points lack merit.

Courts are at liberty to construe a response as a cross-motion for summary judgment. See, e.g., Cox v. Howard, No. 18-12-HRW-CJS, 2019 WL 1217305, at *2 (E.D. Ky. Feb. 15, 2019), R&R adopted by 2019 WL 1210094 (E.D. Ky. Mar. 14, 2019); Jones v. Charter Sch. Admin. Servs. Inc., No. 09-14559, 2011 WL 13374454, at *1 (E.D. Mich. May 5, 2011); Hill v. Crown Castle Int. Corp., 06-91-C, 2007 WL 9789651, at *1 (W.D. Ky. Aug. 16, 2007).

Here, Otter and McKinstry's request for summary judgment raised in their response was based on a claim of entitlement to qualified immunity. Copeland has been on notice of Otter and McKinstry's qualified immunity claim since they filed their answer with affirmative defenses. See Affirmative Defenses at ¶¶ 7–8 (Dkt. 5). He clearly anticipated the issue of qualified immunity at the summary judgment stage, articulating the standard for qualified immunity in his summary judgment brief. See Pl. Mot. for Summ. J. at 7. Further, Copeland had an opportunity to respond to Otter and McKinstry's qualified immunity claim in his reply. However, he chose not to do so. See Pl. Reply in Support of Mot. for Summ. J. (Dkt. 37). Collectively, these considerations weighed in favor of adjudicating Otter and McKinstry's qualified immunity claim raised in the response to Copeland's motion for summary judgment—especially since the Supreme Court has repeatedly directed that "qualified immunity questions should be resolved at the earliest possible stage of a litigation." Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987).

Copeland also complains that Otter and McKinstry failed to seek concurrence—as required by Local Rule 7.1(a)—before filing their response containing their request for summary judgment on qualified immunity grounds. Resp. at PageID.956. However, because the parties conferred prior to the filing of Copeland's motion for summary judgment, see Pl. Mot. for Summ. J. at PageID.469, which raised the issue upon which Otter and McKinstry sought summary judgment, the concurrence requirement of Local Rule 7.1(a) was functionally satisfied.

For these reasons, the Court properly resolved Otter and McKinstry's motion for summary judgment raised in their response to Copeland's motion for summary judgment.

### iii. Copeland's Motion for Summary Judgment on the Seizure Claim

Regarding the wrongful seizure claim, Copeland argued that he was arrested without probable cause, a warrant, or exigent circumstances. Pl. Mot. for Summ. J. at 8. In resolving this claim, the Court first addressed the unbriefed question of when the arrest occurred. The Court determined that Sadler had reasonable suspicion to believe that Copeland had just committed the reported drunk driving offense and, therefore, was justified in attempting to stop Copeland in his driveway to question him about the reported drunk driving offense based on the following facts:

> The dispatcher informed Sadler that a caller had reported seeing a drunk driver pull into 32058 Bruce Street. Sadler was just a few blocks away, and, upon obtaining this address, promptly headed there. When he arrived, Sadler found Copeland standing in the driveway of the exact address the caller reported seeing the drunk driver pull into. In addition, Sadler saw a car parked in the driveway.

4/15/21 Op. at 17.

Copeland now argues that the Court should have concluded that "Defendants had no basis for determining the reliability of the informant, because they didn't know or talk to the informant prior to the detention." Resp. at 19–20. However, a police officer need not speak

directly to the tipster to be able to rely on the tip; police officers may rely on information relayed by the dispatcher who spoke to the tipster. Dorsey v. Barber, 517 F.3d 389, 396 (6th Cir. 2008). Further, Sadler quickly confirmed key parts of the caller's tip—such as the fact that a car was parked in the driveway of the reported address—thereby bolstering the tip's reliability.[2]

The fact that the stop continued into the open garage—after Copeland retreated there—did not render the stop unlawful. 4/15/21 Op. at 19 (citing Rivera v. Washington, 57 F. App'x 558, 562 (4th Cir. 2003) ("[A] person cannot avoid a Terry stop simply by retreating into a home.")). Because Copeland did not yield to Sadler's requests to stop and talk, no seizure occurred at this point. Id. Copeland was seized when Sadler handcuffed him; however, this was not an arrest. Id. at 20 (explaining that "[a]n officer may pursue and restrain a suspect who attempts to flee from a lawful stop, without converting the stop into an arrest"). Ultimately, the Court determined that the stop converted into an arrest after Sadler discovered the outstanding warrant for Copeland's arrest. Id. at 22.

The Court then turned to the question of whether probable cause supported the arrest. The Court answered the question in the affirmative, explaining that the existence of a prior warrant is sufficient to establish probable cause, unless there is some legal basis for holding that the warrant was invalid. Id. at 22–23. Because Copeland did not dispute the validity of the preexisting warrant, the warrant provided the requisite probable cause to support the arrest. Id. at 23. Accordingly, the Court denied Copeland's motion for summary judgment on the wrongful seizure claim.

---

[2] Copeland also complains that Sadler did not know whether Copeland was the informant or the drunk driver when Sadler first approached Copeland. Resp. at 20 n.1. However, the purpose of an investigative stop is to make inquiries to confirm or dispel the officer's reasonable suspicions. See United States v. Butler, 223 F.3d 368, 374 (6th Cir. 2000). Thus, a police officer need not know for certain whether someone is the perpetrator of a crime before stopping that person.

### iv. Rule 56(f) Notice

Sadler did not move for summary judgment on the wrongful search claim, and none of the officers moved for summary judgment on the wrongful seizure claim. The Court provided notice that it was considering granting summary judgment to these non-movants:

> The record before the Court suggests that Copeland may not be able to show that there is a jury-submissible issue on these claims, even assuming that the home belonged to Copeland. Material facts concerning these claims do not appear to genuinely be in dispute, including the following: a caller reported seeing a drunk driver pull into 32058 Bruce Street; dispatch relayed this information to the officers; shortly thereafter, Sadler arrived at this exact address and saw a vehicle and Copeland in the driveway; Sadler attempted to question Copeland in the driveway, but Copeland retreated into the open garage; Sadler followed Copeland into the open garage, continuing to ask Copeland to stop and speak with him; and, after discovering a valid, preexisting warrant for Copeland's arrest, the officers transported Copeland to jail. Based on these undisputed facts, Copeland may not be able to establish that (i) Sadler lacked reasonable suspicion to stop Copeland in the driveway to question him about the reported drunk driving offense; (ii) Sadler was not privileged to enter the garage to continue the stop when Copeland retreated into the garage; and (iii) the officers did not have knowledge of a valid warrant to arrest Copeland.

Id. at 24.

The Federal Rules of Civil Procedure expressly authorize this procedure. "[A]fter giving notice and a reasonable time to respond," as the Court did here, a court may (i) "grant summary judgment for a nonmovant," (ii) "grant the motion on grounds not raised by a party," or (iii) "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(1)–(3). A court may grant a party summary judgment if the court finds that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Copeland mischaracterizes the Court's Rule 56(f) notice as a "sua sponte Motion for Summary Judgment on behalf of Defendants." Resp. at 11. A Rule 56(f) notice is not a sua sponte motion brought by a court on behalf of a party. Rather, Rule 56(f) is a mechanism for

8

courts to neutrally resolve disputes where no genuine issue of material fact exists. See, e.g., Mason v. Green Cnty., 451 F. Supp. 3d 984, 994 (W.D. Wis. 2020) (denying the defendants' motion for summary judgment and utilizing Rule 56(f) to give defendants an opportunity to file a brief identifying any disputed issues of fact that would preclude granting summary judgment in favor of the non-movant plaintiff). There is no need to use judicial resources for a trial or require citizens to come into the courthouse to serve as jurors (especially during a pandemic) when it is clear that one side should prevail as a matter of law. Rule 56(f) thus conserves judicial resources and promotes the public interest, as well.

## II. ANALYSIS

The Court considers in turn (i) whether Sadler is entitled to summary judgment on the search claim and (ii) whether all three officers are entitled to summary judgment on the seizure claim.

### A. Search Claim

Copeland contends that Sadler committed an unlawful search by entering his garage without a warrant or exigent circumstances. Pl. Mot. for Summ. J. at 8. Regarding Sadler's entry into the garage, the Court previously determined that (i) Sadler validly attempted to stop and question Copeland in his driveway, 4/15/21 Op. at 17, and (ii) Sadler was entitled to continue the valid stop in the open garage after Copeland retreated into the garage because "[j]ust as a suspect cannot defeat a proper warrantless arrest that has been set in motion in a public place by retreating into the suspect's home, United States v. Santana, 427 U.S. 38, 43 (1976), 'a person cannot avoid a Terry stop simply by retreating into a home,' Rivera v. Washington, 57 F. App'x 558, 562 (4th Cir. 2003)," id. at 19. This determination was premised on the facts put forth in Copeland's summary judgment brief, in which he recited Sadler's

9

deposition testimony that Sadler first attempted to speak with Copeland while Copeland was standing in the driveway. Pl. Mot. for Summ. J. at PageID.476–478 (citing Sadler Dep. 16–17).

In his response to the Court's Rule 56(f), Copeland argues that when Sadler arrived at the Bruce Street address, Copeland was standing inside the garage—not in the driveway. Resp. at PageID.952 (citing Copeland Dep. at 42–43 (testifying that when Sadler arrived, he walked up to Copeland inside the garage)). Whether Sadler first encountered Copeland in his driveway or in his open garage is a material issue, as explained below.

Under the Fourth Amendment's protection again unreasonable search and seizure, police officers cannot enter a private home without a warrant unless an exception to the warrant requirement applies. See Smith v. Stoneburner, 716 F.3d 926, 929 (6th Cir. 2013). At the core of this right is a recognition that an individual's expectation of privacy is strongest in his or her own home. Silverman v. United States, 365 U.S. 505, 511 (1961). To protect the sanctity of the home, the Fourth Amendment's protections have been extended to the curtilage of the home—i.e., the area surrounding and appurtenant to the home. Daughenbaugh v. City of Tiffin, 150 F.3d 594, 598 (6th Cir. 1998). The extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself. United States v. Dunn, 480 U.S. 294, 300 (1987).

Applying these factors, courts have held that a garage that is physically attached to a home—such as the garage at issue here—is part of the curtilage of that home. See, e.g., Mallory v. City of Riverside, 35 F. Supp. 3d 910, 928–929 (S.D. Ohio 2014). Police officers may not enter such a garage merely because it is open. See Collins v. Virginia, 138 S. Ct. 1663, 1673 n.3 (2018) ("[T]he ability visually to observe an area protected by the Fourth Amendment does not give officers the green light physically to intrude on it."); Pund v. City of Beford, Ohio, No.

10

1:16CV1076, 2019 WL 2026513, at *4 (N.D. Ohio May 8, 2019) ("Collins most naturally applies Fourth-Amendment protection to, say, an open garage, an unfenced side yard, or perhaps a gated courtyard, visible from a lawful vantage point and only partially enclosed, but obviously intimate nevertheless."). Thus, a police officer must have a warrant or some other justification—such as continuing a valid stop that began outside of the open garage—to enter a garage that is attached to a home. See Morgan v. Fairfield Cnty., Ohio, 903 F.3d 553, 565 (6th Cir. 2018) ("[I]f the government wants to enter one's curtilage it needs to secure a warrant or to satisfy one of the exceptions to the warrant requirement."). Defendants do not argue that Sadler had a warrant to enter the garage. Likewise, Defendants do not contend that any exception to the warrant requirement would apply to Sadler's entry if he first encountered Copeland in the garage.

Conversely, courts have found that the Dunn factors cut against finding that a driveway such as the one at issue here—adjacent to a home, not enclosed, abutting a public sidewalk or street, completely viewable by any passersby, see Pictures of Home—is part of the curtilage, see e.g., United States v. Coleman, 923 F.3d 450, 456–457 (6th Cir. 2019); United States v. Galaviz, 645 F.3d 347, 356 (6th Cir. 2011); United States v. Estes, 343 F. App'x 97, 101 (6th Cir. 2009). As a result, a police officer does not intrude upon the curtilage—and, therefore, does not run afoul of the Fourth Amendment—by merely walking onto such a driveway. Coleman, 923 F.3d at 457.

Simply put, if the encounter began in the driveway, Sadler did not need a warrant or an exception to the warrant requirement to approach Copeland, initiate a Terry stop, and then follow him into the garage when Copeland retreated there. As a result, Sadler's entry into the garage would have been lawful. But if the encounter began in the garage, Sadler would have needed a

11

warrant or an exception to the warrant requirement to enter the garage. It appears he had neither. Thus, Sadler's entry into the garage would have been unlawful.

Copeland has shown that there is a material question of fact as to whether Copeland was in the driveway or the garage when Sadler attempted to stop and question him. This material issue precludes the Court from determining at this time whether Sadler's entry into the garage was reasonable. As a result, the Court declines to enter summary judgment on Copeland's search claim in favor of Sadler.[3]

**B. Seizure Claim**

Copeland contends that in addition to wrongfully entering his garage, the officers wrongfully seized him by arresting him. Pl. Mot. for Summ. J. at 8. Arrests are reasonable if supported by probable cause that a crime has been committed; by contrast, investigatory stops are reasonable if supported by mere reasonable suspicion that crime is afoot. United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999).

To determine the reasonableness of an arrest, a court must begin with the threshold question of when the arrest occurred, as not all seizures are arrests. Copeland now argues that he was arrested when Sadler handcuffed him in the garage. Resp. at 23. The Court previously determined, based on the briefing before it, that although Copeland was seized when he was

---

[3] This decision does not alter the Court's prior conclusion that Copeland is not entitled to summary judgment on his search claim. The material issue of where Sadler first encountered Copeland precludes granting summary judgment to Copeland on this claim. Nor does this decision alter the Court's conclusion that Otter and McKinstry are entitled to summary judgment on Copeland's wrongful search claim based on their entitlement to qualified immunity. When Otter and McKinstry arrived at the Bruce Street address, they saw Sadler standing in the garage next to Copeland in handcuffs. Otter Dep. at PageID.520–521 (Dkt. 31-2); McKinstry Dep. at PageID.541 (Dkt. 31-3). The record does not reflect that Otter and McKinstry had any knowledge of Sadler and Copeland's encounters leading up to this moment. As the Court previously explained, "[case law does not clearly establish that] it is unreasonable for officers responding to a drunk driving report to enter an open garage to aid their fellow officer who is already inside the open garage with a handcuffed suspect." 4/15/21 Op. at 14.

handcuffed, he was not arrested at that point. 4/15/21 Op. at 20. The handcuffing was not an arrest because it was a lawful effort to restrain Copeland to effectuate the lawful stop that began in the driveway. Id. And the stop was supported by reasonable suspicion that Copeland had just committed the reported drunk driving offense. Id. at 17. The stop converted to an arrest when Sadler discovered the outstanding warrant and told Copeland that he was being arrested on that warrant. Id. at 22.

Copeland now contends that Sadler first encountered him in the garage, not the driveway. If true, this would mean that Sadler's entry into the garage was unlawful, as discussed above. In turn, Sadler would not have been entitled to detain Copeland in the garage, as the garage was part of Copeland's home. See United States v. Saari, 272 F.3d 804, 809 (6th Cir. 2001) (rejecting the argument that officers may begin an investigatory stop in a home; if such an argument were accepted, "it would have the effect of providing lesser protection to individuals in their homes when the police do not have probable cause to arrest"). If Copeland's version of events is correct and he was arrested when Sadler handcuffed him, then this arrest would be unlawful given that it was not supported by a warrant or exigent circumstances. Estate of Bing v. City of Whitehall, 456 F.3d 555, 564 (6th Cir. 2006) ("A person may not be arrested at home without a warrant, regardless of the existence of probable cause, absent exigent circumstances.") (punctuation modified). Thus, the factual dispute as to where Sadler first encountered Copeland precludes granting Sadler summary judgment on the seizure claim.

Defendants do not contend that the seizure claim should be analyzed any differently as to Otter and McKinstry. See Reply. And the Court will not develop this argument for them. See United States v. Mathur, 624 F.3d 498, 508 (1st Cir. 2010) ("It is not [the Court's] . . . job to put flesh on the bare bones of an underdeveloped argument, . . . and the defendant's plaint could be

13

rejected for that reason alone."). Accordingly, the Court also declines to enter summary judgment in favor of Otter and McKinstry on the seizure claim.[4]

### III. CONCLUSION

For the foregoing reasons, the Court declines to enter summary judgment in favor of Sadler on either the search or seizure claim. The Court also declines to enter summary judgment in favor of Otter and McKinstry on the seizure claim.

SO ORDERED.

Dated: December 28, 2021　　　　　　　　　　s/Mark A. Goldsmith
　　　　　Detroit, Michigan　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[4] This decision does not alter the Court's prior holding that Copeland is not entitled to summary judgment on the seizure claim. Having previously failed to point to facts showing an absence of a genuine dispute, Copeland failed to satisfy his burden as the Rule 56(a) movant to obtain summary judgment. Moreover, even if Copeland had pointed to the facts showing that Sadler may have first encountered Copeland in his garage, this at most creates a genuine dispute of material fact. The existence of a factual dispute still would have precluded granting Copeland summary judgment on his seizure claim.